UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

BRENT STEEPLES,                        )
                                       )
    Plaintiff,                         )
                                       )
v.                                     )   Case No.:  6:15-cv-01861-SGC
                                       )
SOCIAL SECURITY ADMINISTRATION,        )
Commissioner,                          )
                                       )
    Defendant.                         )

### MEMORANDUM OPINION[1]

The plaintiff, Brent Steeples, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying him a period of disability, disability insurance benefits ("DIB"), and social security income benefits ("SSIB"). (Doc. 1). Mr. Steeples timely requested review, and the Appeals Counsel denied review on August 19, 2015. The decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3). For the reasons that follow, the decision of the Commissioner will be remanded.

**I.      FACTS, FRAMEWORK, AND PROCEDURAL HISTORY**

Mr. Steeples was fifty-four (54) years old at the time the Administrative Law Judge ("ALJ") entered a decision denying benefits. (*See* Doc. 14 at 5). Mr. Steeples dropped out of high school in the twelfth grade, never completed his G.E.D, and has past relevant work experience as a poultry boner. (R. 20, 42). Mr. Steeples claims he became disabled on March August 15, 2011,[2] due to hardening arteries, black-outs, shortness of breath, high blood pressure,

---

[1] The parties have consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). (Doc. 13).
[2] Because Mr. Steeples' prior application for benefits was denied on March 16, 2012, the Administrative Law Judge determined the relevant time period in the instant application began on the following day, March 17, 2012. (R. 14).

stomach problems, seizures, and kidney problems. (R. 62). Mr. Steeples filed for benefits on January 31, 2013. (R. 13). After an initial denial, Mr. Steeples requested an ALJ hearing, which was held on October 8, 2013. (*Id.*). The ALJ denied Mr. Steeples' request for benefits on April 9, 2014. (R. 21). The Appeals Council denied review, and Mr. Steeples timely appealed to this court. (R. 1).

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *Doughty v. Apfel,* 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is performing substantial gainful activity ("SGA"). 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in substantial gainful activity, he or she is not disabled and the evaluation stops. *Id.* If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to consider the combined effects of all the claimant's physical and mental impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet durational requirements before a claimant will be found disabled. *Id.* The decision depends on the medical evidence in the record. *See Hart v. Finch,* 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, at which the Commissioner determines whether the claimant's impairments meet the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairments fall within this category, the claimant will be found disabled without further consideration. *Id.* If the impairments do not fall within the listings, the Commissioner determines the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e).

At step four the Commissioner determines whether the impairments prevent the claimant from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, he or she is not disabled and the evaluation stops. *Id.* If the claimant cannot perform past relevant work, the analysis proceeds to the fifth step, at which the Commissioner considers the claimant's RFC, as well as the claimant's age, education, and past work experience, to determine whether he or she can perform other work. *Id.*; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can do other work, he or she is not disabled. *Id.*

Applying the sequential evaluation process here, the ALJ found Mr. Steeples had not engaged in substantial gainful activity during the relevant period. (R. 16). At step two, the ALJ found Mr. Steeples suffered from the severe impairments of hypertensive cardiovascular disease, peripheral vascular disease, obesity, allergic rhinitis, and chronic obstructive pulmonary disease. (*Id.*). The ALJ also classified Mr. Steeples' arthropathies, disorders of the gastrointestinal system, seizure disorder, and diabetes mellitus as non-severe, finding they resulted in minimal work-related limitations. (*Id.*).

Regarding Mr. Steeples' seizure disorder, Dr. David R. Longmire saw him in 2011 following a hypertensive emergency and diagnosed him with an abnormal EEG and seizures, among other ailments. (*Id.*). On March 12, 2012, Dr. Patricia Auxier, one of two consultative examiners, opined Mr. Steeples was suffering from petit mal seizures and concluded he was "at least temporarily" disabled due to seizures and hypertension. (R. 384). A second consultative examiner, Dr. Boyde Jerome Harrison, found Mr. Steeples' "description does not fully endorse the diagnosis of seizures." (R. 335). Dr. Harrison also noted it was "difficult to endorse [the seizure disorder] diagnosis with one workup and no follow-up from the neurologist." (R. 336).

Regarding Mr. Steeples' gastrointestinal problems, Dr. Harrison noted the diagnosis was "not endorsed by other medical records or by [the] description of the workup." (R. 335). The ALJ found Mr. Steeples' ulcerative colitis was non-severe because, although Mr. Steeples stated he received the diagnosis twenty-five (25) years prior, the record showed only one bout of ulcerative colitis-related problems. (R. 16). The ALJ also noted the records of Dr. Vanessa Ragland, who in July 2013 diagnosed Steeples with colitis, enteritis, gastroenteritis, hypertension, seizure disorder, and low back pain. (*Id.*). Dr. Ragland noted Mr. Steeples did not appear to be taking medications prescribed for diabetes and seizure disorder, which the ALJ viewed as a compliance issue. (*Id.*).

At step three, the ALJ found Mr. Steeples did not have an impairment or combination of impairments meeting or medically equaling any of the listed impairments. (R. 17). Before proceeding to step four, the ALJ determined Mr. Steeples had the RFC to perform light work, except that he: (1) could occasionally perform postural maneuvers; (2) could not climb ladders, ropes, or scaffolds; (3) must avoid concentrated hot or cold temperature extremes; (4) should avoid concentrated dust, odors, fumes, gasses, and poor ventilation; (5) should avoid dangerous, moving, unguarded machinery; and (6) should avoid unprotected heights, large bodies of water, and commercial driving. (R. 18). In determining the RFC, the ALJ considered Mr. Steeples' symptoms, the medical record, and opinion evidence. (R. 18-20). The ALJ concluded that, while the medically determinable impairments could reasonably be expected to cause Mr. Steeple's symptoms, his statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely credible. (R. 19).

At step four, the ALJ determined Mr. Steeples was capable of performing his past relevant work as a chicken boner. (R. 20-21). In reaching this conclusion, the ALJ relied on the

4

testimony of the vocational expert. (*Id.*). Accordingly, the ALJ concluded his findings by stating Mr. Steeples was not disabled. (R. 21).

Following the ALJ's decision, Mr. Steeples sought review from the Appeals Council. (R. 7). Attached to the request for review were medical exhibits from Dr. Ragland: (1) a letter dated May 15, 2014; (2) a mental medical source opinion; (3) a physical medical source opinion; and (4) medical records from examinations on August 14 and December 30, 2014. (R. 419-442). On August 19, 2015, the Appeals Council denied the request for review, noting that it had considered the additional evidence. (R. 2). Regarding this new evidence, the Appeals Council stated it "found that this information does not provide a basis for changing" the ALJ's decision. (*Id.*). Mr. Steeples timely appealed to this court.

## II.    STANDARD OF REVIEW

A court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). A court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, a court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the

possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).  Indeed, even if a court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence.  *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)).  Moreover, failure to apply the correct legal standards is grounds for reversal.  *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

### III.   DISCUSSION

The sole issue presented on appeal is whether the "Appeals Council inadequately reviewed Steeples' new evidence and erroneously denied review."  (Doc. 14 at 9).  Generally, claimants are allowed to present new evidence at each stage of the administrative process, including when requesting review by the Appeals Council.  *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir. 2007).  "The Appeals Council must consider new, material, and chronologically relevant evidence and must review the case if 'the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.'"  *Id.* (*citing* 20 C.F.R. § 404.970(b)).  Where a claimant specifically challenges the decision of the Appeals Council to deny review, the record on appeal to the district court

includes the evidence submitted by the claimant after the ALJ's hearing and decision. *Falge v. Apfel,* 150 F.3d 1320, 1323 (11th Cir.1998).

Where a claimant challenges the adequacy of the Appeals Council's evaluation of new evidence, the district court may properly review the new evidence and evaluate whether the Appeals Council should consider it. *See Keeton v. Dep't of Health and Human Services,* 21 F.3d 1064, 1067-68 (11th Cir. 1994); *Epps v. Harris,* 624 F.2d 1267, 1272-73 (5th Cir. 1980). A claimant may challenge the Appeals Council's: (1) refusal to consider new evidence; or (2) decision, after reviewing new evidence, to deny review of the ALJ's decision. *See, e.g., Keeton,* 21 F.3d at 1068; 20 C.F.R. § 404.970(b) (explaining the Appeals Council must consider evidence not presented to the ALJ only when it is "new," "material," and relates to the "period of time on or before the ALJ's hearing and decision"); *Smith v. Bowen,* 792 F.2d 1547, 1551 (11th Cir. 1986). In either case, the district court's standard of review is *de novo,* and the claimaint bears the burden of establishing the Appeals Council's error. *See Caulder v. Bowen*, 791 F.2d 872, 875 (11th Cir. 1986); *Fry v. Massanari*, 209 F. Supp. 2d 1246, 1251-55 (N.D. Ala. 2001). Additionally, in either case, a claimant must show the evidence presented to the Appeals Council was new, non-cumulative, and material. *See Falge,* 150 F.3d at 1324; *Fry* 209 F. Supp. 2d at 1252. Evidence is material if it is "relevant and probative so that a reasonable probability exists that it would change the administrative results." *Keeton,* 21 F.3d at 1068 (citing *Caulder,* 791 F.2d at 877); *see Fry* 209 F. Supp. 2d at 1252. A claimant challenging the Appeals Council's decision, after reviewing the new evidence, to deny review of the ALJ's decision faces a third requirement: "good cause for the failure to submit the evidence at the administrative level." *Keeton,* 21 F.3d at 1068.

Here, the new evidence submitted to the Appeals Council consisted of four exhibits submitted by Dr. Ragland, a doctor at a clinic where Mr. Steeples had sought treatment for "many years." (R. 419). The evidence consists of: (1) a May 15, 2014 letter from Dr. Ragland; (2) an undated "Medical Assessment Form (Mental);" (3) an undated "Medical Source Opinion (Physical);" and (4) medical records reflecting Mr. Steeple's August 14 and December 30, 2014 doctor's visits. (R. 419-442). All of these exhibits appear to be new and non-cumulative, and the Commissioner does not contend otherwise. Additionally, while created after the ALJ's decision, the evidence relates to long-standing conditions addressed by the ALJ; accordingly, the new evidence relates to the period of time before the ALJ's decision. *Caulder*, 791 F.2d at 878 (fact that doctor's treatment was administered after the ALJ's decision did not undermine the weight due). Finally, as to Mr. Steeples' burden to show good cause for failing to present the evidence to the ALJ, the Eleventh Circuit has held that "[n]onexistence of the evidence at the time of the administrative proceedings may constitute good cause." *Id.* at 878–79. Thus, the analysis here focuses on whether the new evidence is material—i.e. whether it is "relevant and probative so that a reasonable probability exists that it would change the administrative results." *Keeton,* 21 F.3d at 1068. As explained below, Dr. Ragland's letter is material evidence warranting review by the Appeals Council.

After noting Mr. Steeples had been a patient at his clinic for many years, Dr. Ragland's letter documents Mr. Steeples' lack of a high school education, illiteracy, and lack of job training or specialized skills. (R. 419). The letter states that, while working as a chicken boner in 2011, Mr. Steeples suffered a seizure at work and took medical leave for approximately six (6) months; after returning from medical leave, Mr. Steeples again seized while working. (*Id.*). The letter states Mr. Steeples' health had deteriorated over the years and lists his diagnoses of seizure

disorder, diabetes, heart disease, obesity, and arm numbness and tingling. (*Id.*). Dr. Ragland noted these conditions were uncontrolled due to Mr. Steeples' unemployment, non-insured status, and lack of resources, which prevented him from affording medication or appointments with specialists. (*Id.*). According to the letter, during a May 12, 2014 visit, Mr. Steeples had a blood pressure reading of 200/127, "a loud soft heart murmur" (believed to be a new condition), triglicerides over 700, and distressed breathing and was complaining of experiencing seizures. (*Id.*). Based on Mr. Steeples' condition, lack of education, and lack of skills, Dr. Ragland opined he would be unable to sustain any type of employment. (*Id.*).

It is true that Dr. Ragland's opinions regarding Mr. Steeples' ability to perform work are not entitled to controlling weight, as they are opinions on matters reserved for the Commissioner. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d); SSR 96-5p. However, such statements "must be considered in the Secretary's examination of the totality of the evidence." *Caulder*, 791 F.2d at 878. More importantly, the letter specifies that Mr. Steeples' conditions are uncontrolled because he cannot afford the prescribed medicine and treatment. (R. 419).[3] While Mr. Steeples did not have an extensive treating relationship with Dr. Ragland, he had been a patient at the Family Medical Associates clinic for years. As a result, Dr. Ragland would be in a position to know whether Mr. Steeples had the ability to pay for prescribed medications and medical treatment.

The ALJ's decision cites Mr. Steeples' lack of compliance in three instances. First, in assessing the severity of Mr. Steeples' impairments, the ALJ noted medical compliance "has been an issue." (R. 16). Specifically, the ALJ cited July 2013 medical records from Dr. Ragland indicating that Mr. Steeples needed diabetes medicine and did "not appear to be taking his seizure med[ication] either." (R. 16). It is unclear how heavily the ALJ relied on this finding of

---

[3] In this respect, the letter corroborates Mr. Steeples' testimony during the hearing—testimony that was not addressed in the ALJ's decision. (R. 31, 33).

9

medical non-compliance in determining that the plaintiff's diabetes and seizure disorder were not severe.  Next, in determining Mr. Steeples' seizure disorder did not meet the listing for epilepsy, the ALJ noted the listing only applies where the impairment persists despite following prescribed antiepileptic treatments.  (R. 18).  The ALJ concluded the record demonstrated Mr. Steeples had "been non-compliant with seizure medication," and thus found the impairment did not satisfy the listing.  (*Id.*).  Finally, in determining Mr. Steeples' RFC, the ALJ discredited his testimony concerning the severity of limitations he experienced.  (R. 19).  This credibility determination was based, at least in part, on Mr. Steeples' failure to take medications prescribed to treat diabetes and seizures.  (*Id*.).[4]

Where compliance with a prescribed course of treatment is at issue, the ALJ has a duty to fully investigate possible reasons for the alleged noncompliance.  *See Lucas v. Sullivan*, 918 F.2d 1567, 1571-73 (11th Cir. 1990).  In order for an ALJ to rely on noncompliance to draw a negative inference regarding credibility, the ALJ must first inquire as to whether the claimant has a reasonable explanation for noncompliance.  *See Grier v. Colvin*, 117 F. Supp. 3d 1335, 1348 (N.D. Ala. 2015).  Where a claimant cannot afford a prescribed treatment and cannot otherwise

---

[4] The ALJ also relied on Mr. Steeples' tobacco use as evidence of non-compliance.  (R. 19).  However, as at least one court sitting within this district has held, even assuming a doctor's instruction to stop smoking constitutes a prescribed course of treatment:

> failure to stop smoking does not necessarily constitute a refusal to follow that prescribed treatment.  A willful refusal to follow treatment may not be assumed from a mere failure to accomplish the recommended change. . . .   Mere failure to stop smoking, like a failure to lose weight, does not constitute a refusal to undertake a prescribed course of treatment.

*Seals v. Barnhart,* 308 F. Supp. 2d 1241, 1250 (N.D. Ala. 2004) (*citing McCall v. Bowen*, 846 F.2d 1317, 1319 (11th Cir. 1988)).  The court in *Seals* went on to hold that, in order for a failure to stop smoking to constitute noncompliance, the ALJ must either find the claimant was "actually able, mentally and physically, to stop smoking" or cite to evidence that failure to stop smoking was unjustified.  (*Id.*).  Because the ALJ made no such finding and cited to no such evidence here, Mr. Steeple's failure to stop smoking cannot be categorized as medical non-compliance.

obtain the treatment, noncompliance is excused. *Dawkins v. Bowen*, 848 F. 2d 1211, 1213 (11th Cir. 1988). Here, despite Mr. Steeples' testimony that he could not afford prescribed medication, the ALJ's decision does not address whether poverty excused his noncompliance. Moreover, the finding of noncompliance appears to have played a crucial role in the ALJ's conclusion that certain of Mr. Steeples' conditions were not severe, that his seizure disorder did not meet a listing, and that his testimony regarding his limitations was less than fully credible and thus that he had an RFC for limited light work.

Dr. Ragland's letter corroborates the plaintiff's testimony that he could not afford medical treatment and highlights the fact that the ALJ's analysis was incomplete with regard to the finding of medical noncompliance. Accordingly, Dr. Ragland's letter is relevant and probative; there is a reasonable probability that it would change the administrative result. *See Keeton*, 21 F.3d at 1068. Having found that Dr. Ragland's letter constitutes material evidence, it is unnecessary to analyze the additional exhibits submitted to the Appeals Council, aside from noting that the evidence appears to be the type of new, non-cumulative, temporally relevant evidence that should be considered—together with the record as a whole—when reviewing the ALJ's decision.

## IV.    CONCLUSION

For all of the foregoing reasons, the decision of the Appeals Council denying review is subject to remand for proper consideration of Mr. Steeples' evidence. A separate order will be entered.

**DONE** this 24th day of February, 2017.

STACI G. CORNELIUS
U.S. MAGISTRATE JUDGE